**WMX TECHNOLOGIES, INC.,** f/k/a/ **Waste Management, Inc., a Delaware corporation; and Waste Management of California, Inc., a California corporation, Plaintiffs–Appellants,**

v.

**Edwin L. MILLER, Jr., as District Attorney of San Diego County, California, Defendant–Appellee.**

No. 93–55917.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 1994.

Decided April 8, 1996.

Robert H. Friebert and Matthew W. O'Neill, Friebert, Finerty & St. John, S.C., Milwaukee, Wisconsin, and Gerald L. McMahon and David J. Zubkoff, Seltzer, Caplan, Wilkins & McMahon, San Diego, California, for plaintiffs-appellants.

Morris G. Hill, Office of the County Counsel, San Diego, California, for defendant-appellee.

Before: HUG, Chief Judge, and FLOYD R. GIBSON,* and HAWKINS, Circuit Judges.

HUG, Chief Judge:

WMX Technologies, Inc. ("WMX"), formerly known as Waste Management, Inc., and its wholly-owned subsidiary, Waste Management of California, Inc. ("Waste Management"), appeal from the district court's Federal Rule of Civil Procedure 12(b)(6) dismissal of their 42 U.S.C. § 1983 suit against San Diego County District Attorney Edwin Miller. Miller allegedly damaged the plaintiffs' business reputation and goodwill by preparing and disseminating a report linking the plaintiffs to organized crime. The plaintiffs sued for declaratory and injunctive relief alleging the deprivation of various property and liberty interests without due process, as well as the violation of their First Amendment rights. The district court dismissed all causes of action. We affirm the judgment of the district court.

---

* Honorable Floyd R. Gibson, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

## BACKGROUND

Waste Management, a wholly-owned subsidiary of WMX, is a business which collects, stores, and disposes of solid and liquid waste. Waste Management proposed the development of a new landfill site in San Diego County, which was experiencing a "landfill crisis." In November 1990, Waste Management filed an application with the San Diego County Board of Supervisors ("Board") seeking the necessary use permits.

In response to the application, the Board unanimously voted to authorize San Diego County Supervisor Susan Golding to request District Attorney Miller to investigate rumors regarding the plaintiffs' alleged connections with organized crime and other possible improprieties. In commencing his investigation, Miller asked WMX to waive any possible liability claims of itself or its subsidiaries, including Waste Management. He also requested WMX to provide access to any documents his office sought and to pay for the costs of the investigation. WMX refused and instead offered to provide access to most documents, waive some liability claims, and pay for part of the investigation. No agreement was reached, and Miller proceeded with his investigation without the waiver of liability and agreement to provide documents.

In April 1992, Miller sent his final report ("the report") to the Board. He also disclosed his report to the press. Section V of the report, entitled "Organized Crime Connections," is the focus of this appeal. It traces the plaintiffs' alleged criminal connections with organized crime, concluding that the plaintiffs are connected to the Mafia.

In response to the report, the plaintiffs sued Miller in his official capacity under 42 U.S.C. § 1983. The complaint alleges that section V damaged the plaintiffs' reputation and business goodwill and that this effect was intended by Miller. According to the complaint, the report's implication of any impropriety by the plaintiffs is false. The complaint states that Miller disclosed copies of

the report to the press and that the dissemination deprived the plaintiffs of their liberty and property interests without due process of law. The specific claims for relief alleged in the complaint are:

1. The defendant deprived the plaintiffs of their business goodwill, a legislatively created property interest in California;

2. The defendant deprived the plaintiffs of liberty by stigmatizing the plaintiffs "plus" distinctly altering their property interest in their business goodwill;

3. The defendant violated Waste Management's First Amendment right to petition the Government;

4. The defendant deprived Waste Management of liberty by stigmatizing it in connection with the exercise of its First Amendment right to petition the Government; and

5. The defendant deprived the plaintiffs of liberty by, in effect, making an official and public adjudication of criminal culpability based on the plaintiffs' alleged involvement with criminal organizations.

The district court entered a Rule 12(b)(6) dismissal of all five causes of action. It dismissed claims one, two, and five with prejudice, but it allowed leave to amend the claims related to alleged First Amendment violations (claims three and four). The plaintiffs chose not to amend and instead to rely on the complaint that was dismissed. The plaintiffs timely appealed.

■ The district court had jurisdiction pursuant to 28 U.S.C. §§ 1343, 2201. We have jurisdiction under 28 U.S.C. § 1291. Ordinarily, a dismissal without prejudice is not appealable. However, because the plaintiffs elected to stand on the complaint and appeal rather than amend, the district court dismissal is a final appealable order. *Carson Harbor Village Ltd. v. City of Carson*, 37 F.3d 468, 471 n. 3 (9th Cir.1994) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1053 (9th Cir.1992)).

## STANDARD OF REVIEW

■ We review *de novo* a district court's Rule 12(b)(6) dismissal. *Everest & Jennings, Inc. v. American Motorists Ins.*, 23 F.3d 226, 228 (9th Cir.1994). In reviewing the sufficiency of the claim, we accept all allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Id.*

## DISCUSSION

■ "To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir.1986). Paragraph 8 of the complaint alleges that Miller acted under color of state law. The question remains whether the plaintiffs properly alleged that they have been deprived of constitutionally protected rights. The procedural due process guarantees of the Fourteenth Amendment apply only when a constitutionally protected liberty or property interest is at stake. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). We look to state law to define the dimensions of protected property interests. *Id.* at 577, 92 S.Ct. at 2709.

### 1. *Property Interest*

We first consider whether the complaint stated a claim that they were deprived of a property interest. The plaintiffs contend that they had a property interest in their business goodwill and that Miller's report deprived them of business goodwill without due process. They argue that because the standing and reputation of a business is a vital part of the goodwill of a business, injury to the standing and reputation of the business becomes a deprivation of the goodwill of the business. The district court concluded that, under the circumstances of this case, the plaintiffs had no protected property interest in obtaining a permit or in their reputation. We agree.

In making this claim, the plaintiffs rely heavily upon this court's decision in *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310 (9th Cir.1989). In that case, we reviewed a claim for deprivation of property without due process in the context of an alleged injury to business goodwill in California. In *Soran-*

*no's Gasco,* state officials suspended Soranno's Gasco's bulk plant permits and sent letters to its customers informing them that their own permits might be subject to suspension if they continued to receive petroleum from Soranno's Gasco. The plaintiffs filed a section 1983 claim contending that suspension of Soranno's Gasco's permits and notification of its suspension to its customers deprived the plaintiffs of their property interest in business goodwill without due process. *Id.* at 1313.

We held in *Soranno's Gasco* that in light of the California statute conferring property status to business goodwill, "[t]he goodwill of one's business is a property interest entitled to protection; the owner cannot be deprived of it without due process." *Id.* at 1316. Concluding that the plaintiffs had a protected property interest, we ultimately held that a post-deprivation hearing provided adequate due process. *Id.* at 1318.

*Soranno's Gasco,* however, does not control this case because in the context of the plaintiffs' allegations their alleged injury to their business goodwill does not go beyond injury to their business reputation. *Soranno's Gasco* clearly involved more than mere injury to reputation. It involved actual, direct interference with business goodwill by the state through letters sent directly to Soranno's Gasco's customers. The state threatened Soranno's Gasco's customers with suspension of their own permits if they continued to deal with Soranno's Gasco, thereby directly interfering with Soranno's Gasco's "expectation of continued patronage" by those customers.

■ In contrast, this case only involves defamatory remarks made to the public generally which allegedly injured the plaintiffs' business reputation. This is not sufficient to satisfy the requirement that a constitutionally protected property interest be at stake. Damage to business reputation without more does not rise to the level of a constitutionally protected property interest. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Allowing the plaintiffs' claim under these circumstances would constitutionalize the state law tort of defamation. We decline to go so far. "The Due Process Clause does not, by its own force, extend individuals a right to be free of injury wherever a state is characterized as the tortfeasor. The Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Johnson v. Barker,* 799 F.2d 1396, 1399 (9th Cir.1986) (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976)).

### 2. *Liberty Interest In Business Goodwill*

■ The plaintiffs next allege that, under the "stigma-plus" test of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the stigma caused by the report plus the injury to their business goodwill deprived them of their liberty interest in their good name, honor, and reputation. In *Paul,* the plaintiff's photograph was included by local police chiefs in a flyer of "active shoplifters," following the plaintiff's arrest for shoplifting. *Id.* at 695, 96 S.Ct. at 1158. After the shoplifting charge was dismissed, the plaintiff filed suit under 42 U.S.C. § 1983 against the police chiefs, alleging that the police officials stigmatized his reputation such that his future employment opportunities were impaired, thereby depriving him of liberty interests protected by the Fourteenth Amendment. *Id.* at 696–97, 96 S.Ct. at 1158–59. The Supreme Court rejected the plaintiff's claim, finding that injury to reputation by itself was not a "liberty" interest protected under the Fourteenth Amendment. *Id.* at 708–09, 96 S.Ct. at 1164. Instead, the Court required that in addition to the stigma inflicted to one's reputation, one must also allege the distinct alteration or extinction of a previously recognized right or status. *Id.* at 711, 96 S.Ct. at 1165. This has become known as the "stigma-plus" test.

■ The immediate problem with the plaintiffs' argument in this case is that we have already concluded that under the circumstances present here, the plaintiffs have not alleged an alteration to a previously recognized right or status. At most, they have alleged injury to their business reputation, which we concluded above is not analogous to

injury to business goodwill. Reputation alone is not a constitutionally protected property interest. Thus, the plaintiffs have no "distinct alteration or extinction" of a previously recognized right to add to their alleged stigmatization.

Furthermore, even if the plaintiffs had established both prongs of the "stigma-plus" test, there is no state action to support the latter prong of the test. The plaintiffs urge us to follow the Fifth Circuit's lead in *Marrero v. City of Hialeah*, 625 F.2d 499 (5th Cir.1980), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981), and recognize injury to the "plus" even if it depends upon the reactions of third parties, as opposed to resulting from direct governmental action. The plaintiffs in *Marrero* sued city officials for defamatory remarks which allegedly stigmatized their reputations and injured their business goodwill. The district court dismissed Marrero's claims for failure to state a claim. In reversing the district court, the Fifth Circuit held that because Florida recognizes business goodwill as a property interest, it cannot be injured without due process. *Marrero*, 625 F.2d at 514. Therefore, because the alleged defamation caused both injury to reputation and damage to a protected interest, the stigma-plus test was satisfied. *Id.* at 516. "The fact that the injury to the 'plus' here, *i.e.*, to appellants' protected interest in goodwill, depends upon the reactions of third parties to the defamatory statements made by the government is immaterial." *Id.* at 516 n. 23.

However, *Marrero* is not without criticism. The district court in *Sullivan v. New Jersey Div. of Gaming Enforcement*, 602 F.Supp. 1216, 1222–23 (D.N.J.1985), *aff'd*, 853 F.2d 921 (3d Cir.1988), expressly disapproved of *Marrero*. The plaintiffs in *Sullivan* argued that the defamation by government officials caused them to lose protected rights in contractual relations with third persons. In rejecting this argument, the court pointed out that the government lacked any direct involvement with the contractual relations.

In short, a *sine qua non* of a "stigma-plus" suit is that the "plus" must be the result of

state action directly affecting the plaintiff's rights or status under the law. The fact that state action may be involved in the "stigma" (*i.e.*, defamation) is not of itself sufficient to maintain the action.

*Sullivan*, 602 F.Supp. at 1222.

■ We agree with *Sullivan*. As we pointed out in *Cooper v. Dupnik*, 924 F.2d 1520, 1534 (9th Cir.1991), *aff'd in relevant part*, 963 F.2d 1220 (9th Cir.1992) (en banc), "[i]t seems to us that the result in *Sullivan* makes better law and is truer to *Paul* than the result in *Marrero*." In dicta, we agreed that state action must accompany both prongs of the "stigma-plus" test. "If plaintiff only has to show that the state defamed him—and not that the state did something else as well—in order to state a claim for deprivation of liberty under § 1983, the effect would be to transmute all defamation actions against state actors in which plaintiff can show some harm resulting from the defamation into § 1983 actions." *Sullivan*, 602 F.Supp. at 1223. We conclude today that the "stigma-plus" test requires that the defamation be accompanied by an injury directly caused by the Government, rather than an injury caused by the act of some third party.

■ In this case, the plaintiffs failed to show that Miller's report directly interfered with their interest in goodwill. Instead, the plaintiffs complain of potential reactions of third parties to the report. Because this does not follow the intent and spirit of *Paul*, we reject the plaintiffs' second claim and refuse to extend constitutional protection to a possible, indirect impairment of business goodwill.

### 3. *Right to Petition*

In its third claim, Waste Management alleged that Miller's report (1) impaired its ability to obtain a use permit for its proposed landfill, (2) was intended to retaliate against Waste Management for exercising its First Amendment right to petition the Government, (3) was intended to chill and did chill its First Amendment right to petition.[1]

■ We affirm the dismissal of Waste Management's claim because we conclude

---

1. The First Amendment provides:

Congress shall make no law … abridging the freedom of speech, or of the press; or the right

that its application for a major use permit is not equivalent to a petition to the Government for redress of grievances under the First Amendment. The Supreme Court has limited Petition Clause protection to fact settings where associational or speech interests are also implicated. *See The First Amendment Right to Petition Government for a Redress of Grievances: Cut from a Different Cloth*, Julie M. Spanbauer, 21 Hastings Const. L.Q. 15 (1993) (tracing history of Petition Clause and examining Supreme Court doctrine). Neither interest is involved in the present case. Because Waste Management's application for a use permit does not fall within the constitutional protection of the First Amendment's Petition Clause, its third claim must also fail.

### 4. Liberty Interest In First Amendment Rights

Waste Management again relies on the "stigma-plus" test from *Paul* to argue that Miller's report deprived it of its liberty without due process. This time Waste Management argues that the stigma occurred "in connection with"[2] the exercise of its First Amendment right to petition the Government for approval of the permit to develop and operate the landfill. The district court dismissed the claim without prejudice because Waste Management had failed to state a claim in count three for a violation of its First Amendment rights. Without the First Amendment violation, there is no federally protected right to connect with the plaintiffs' alleged injury to reputation as required under the "stigma-plus" test. *See Cooper*, 924 F.2d at 1532. Thus, dismissal of the fourth claim is also proper.

### 5. Quasi–Adjudication of Criminal Conduct Without Due Process

The plaintiffs make their final claim under *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct.

1843, 23 L.Ed.2d 404 (1969). In the complaint, the plaintiffs allege that Miller "exercised a function closely akin to making an official and public adjudication of criminal culpability." The report allegedly "publicly branded and continues to brand the plaintiffs as connected to organized crime." The plaintiffs contend that due process entitled them to notice and an opportunity to be heard prior to the dissemination of the report.

In *Jenkins*, the Supreme Court reviewed the constitutionality of a statute that created a commission of inquiry to make public findings concerning criminal violations in labor management relations. The plaintiffs in *Jenkins* complained that the commission was an "executive trial agency 'aimed at conducting public trials concerning criminal law violations' and that its function was publicly to condemn." *Jenkins*, 395 U.S. at 419, 89 S.Ct. at 1847. The Court agreed and held that because the commission clearly exercised an accusatory function, its procedures violated the minimal requirements of due process. *Id.* at 428, 89 S.Ct. at 1852. Rather than serve a purely investigative function, the commission in *Jenkins* was meant to "supplement and assist the efforts and activities of the several district attorneys, grand juries and other law enforcement officials and agencies...." *Id.* at 415, 89 S.Ct. at 1845.

The present case is distinguishable from *Jenkins*. Miller exercised an investigatory, rather than an accusatory, function for the County of San Diego. The Board had asked Miller to investigate allegations of impropriety because Waste Management proposed to own and operate a landfill in San Diego County. In its memorandum to Miller, the Board requested that the plaintiffs' operating record be "closely examined, and

of the people peaceably to assemble, and to petition the Government for a redress of grievances.
U.S. Const. amend. I.

2. In *Cooper*, we clarified the two ways in which the "stigma-plus" test of *Paul* could be met. *Cooper*, 924 F.2d at 1532 (citing *Stevens v. Rifkin*, 608 F.Supp. 710, 726–27 (N.D.Cal.1984)). First,

a plaintiff can allege that the injury to reputation caused the denial of a federally protected right. *Cooper*, 924 F.2d at 1532. Or, second, a plaintiff can allege the injury to reputation was inflicted in connection with a federally protected right. *Id.* Waste Management uses the second method to make its claim for liberty interests in the right to petition the Government.

impartially investigated to see how their record compares with other nationwide firms in the waste industry." We note that the memorandum also cautioned against any "unfounded allegations or hearsay comments [that may] tarnish individual reputations." Miller merely conducted the investigation and reported his findings to the Board so that further legislative action could be taken and the Board could approve or deny Waste Management's application. This is a far cry from the accusatory, quasi-adjudicatory commission found in *Jenkins*.

The plaintiffs cite no authority, and we have found none, that a public official must give notice before disseminating a report under the circumstances of this case. As noted above, this case does not present an accusatory, adjudicatory fact pattern. The plaintiffs have failed to state a claim upon which relief could be granted for a deprivation of liberty in violation of due process.

### 6. *Miller's Claim of Legislative Immunity*

Because we affirm the district court's dismissal of all claims, we do not address Miller's claim of legislative immunity.

**AFFIRMED.**

HAWKINS, Circuit Judge, concurring in part and dissenting in part:

The majority opinion tells government officials that they may freely savage the reputation and goodwill of a citizen whose principal "sin" appears to have been a belief in the fair treatment of those who petition local government. In so doing, the majority unduly limits the reach of 42 U.S.C. § 1983, which was specifically designed to protect the property and liberty of all citizens, and misinterprets *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310 (9th Cir.1989). Accordingly, I dissent from Parts 1 and 2 of the majority opinion.[1]

### I. FACTS

The appeal arrives here on the bare bones of the Complaint of Plaintiff–Appellant WMX

Technologies, Inc. ("WMX"). In reviewing a dismissal for failure to state a claim, all allegations of material fact in the Complaint must be taken as true and construed in the light most favorable to WMX. *Everest & Jennings, Inc. v. American Motorists Ins.*, 23 F.3d 226, 228 (9th Cir.1994).

The Complaint tells us that San Diego County ("the County"), wishing to attract private industry to the operation of a solid waste landfill, began a public search for a suitable landfill site and waste management contractor. WMX, an industry leader, responded by petitioning the County Board of Supervisors ("the Board") for permission to build and operate a landfill to serve San Diego County.

While considering WMX's petition, the Board apparently heard rumors concerning alleged organized crime connections of WMX and asked the office of San Diego County Attorney Edwin L. Miller, Jr. ("Miller") to conduct an investigation into WMX. At least one of the Supervisors made it clear in a memorandum to Miller that the Board's request for an investigation was based on rumor only and that Miller should take care to insure that reputations were not damaged in the process. Taking heed of the request, but not apparently the cautionary suggestion, Miller proceeded to investigate.

At the onset, Miller asked WMX to cooperate in the investigation, and WMX initially agreed. The parties, however, could not agree on the extent and nature of WMX's cooperation. Miller asked WMX to help pay for the costs of the investigation. WMX agreed to pay some, but not all, of the investigative costs. Miller asked WMX to waive all privileges and open its files. WMX offered to waive most privileges and open all relevant files for inspection. Miller asked WMX to waive any defamation claims that might arise from the release of Miller's report. WMX refused. When the parties could not reach agreement on these matters, Miller proceeded with his investigation on his own. It took some 18 months to complete.

---

[1] I join the majority as to Parts 3 (Right to Petition), 4 (Liberty Interest in First Amendment Rights), and 5 (Quasi–Adjudication of Criminal Conduct Without Due Process). I would leave the issue of legislative immunity discussed by the majority in Part 6 of its opinion to the district court on remand.

Despite repeated requests from WMX to have an opportunity to review Miller's report before its release, Miller did not permit WMX to read or comment on the contents of the report before its presentation to the Board and public release. The report made highly damaging comments about WMX, its past and present principals, and the company's alleged involvement with reputed organized crime figures.[2]

After the report was released by Miller, WMX brought the action below pursuant to 42 U.S.C. § 1983. Miller promptly moved to dismiss the WMX Complaint on the basis that, even if all the allegations of the Complaint were true, it failed to state a claim upon which relief could be granted. The district court agreed and dismissed the action.

## II. WMX'S § 1983 DEPRIVATION OF PROPERTY CLAIM

### A. Business Goodwill as Property

#### 1. General Principles

Consideration of this appeal must begin with two fundamental propositions. First, state law determines what constitutes property cognizable under the due process clause. *See, e.g., Board of Curators v. Horowitz*, 435 U.S. 78, 82, 98 S.Ct. 948, 951, 55 L.Ed.2d 124 (1978) ("[P]roperty interests are creatures of state law."); *Goss v. Lopez*, 419 U.S. 565, 572–74, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975) ("Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimen-

sions defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits.") (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982) ("[W]hile [a state] legislature may elect not to confer a property interest, ... it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate safeguards.") (internal quotations and citations omitted).[3]

Second, California law defines business goodwill as property. Section 655 of the California Civil Code, entitled "Things subject to ownership," provides:

**In What Property May Exist.** There may be ownership of all inanimate things which are capable of appropriation or of manual delivery; of all domestic animals; of all obligations; of such products of labor or skill as the composition of an author, *the good-will of a business*, trade-marks and signs, and of rights created or granted by statute. (Emphasis added).

Section 14102 of California's Business and Professions Code is even more to the point: "The good will of a business is property and is transferable."

Consideration of these two fundamental propositions led us in *Soranno's Gasco* to conclude that a company may not be deprived of its business goodwill by someone acting under color of California law without due process. *Soranno's Gasco*, 874 F.2d 1310, 1316 (9th Cir.1989).[4] *Soranno's Gasco*,

---

**2.** WMX alleged in its Complaint that it does business nationally and frequently competes with other companies for business. WMX further alleged that the false information disseminated by Miller has been and will be used by others to gain competitive advantage. WMX's fear that Miller's report will interfere with WMX's relationship with customers in other cities appears justified; stories regarding Miller's conclusions appeared in newspapers across the country, including papers in Los Angeles, St. Louis, Chicago, and New York.

**3.** The Supreme Court has recognized a wide range of property interests based on the protection of those interests by state statute. *See, e.g. Logan*, 455 U.S. at 430—31, 102 S.Ct. at 1155 (1982)(right to redress discrimination); *Barry v.*

*Barchi*, 443 U.S. 55, 64 & n. 11, 99 S.Ct. 2642, 2649 & n. 11, 61 L.Ed.2d 365 (1979)(horse trainer's license); *Memphis Light, Gas, & Water Div. v. Craft*, 436 U.S. 1, 9–12, 98 S.Ct. 1554, 1560–61, 56 L.Ed.2d 30 (1978)(utility service); *Goldberg v. Kelly*, 397 U.S. 254, 261–63, 90 S.Ct. 1011, 1016–18, 25 L.Ed.2d 287 (1970)(state and federal welfare benefits); *cf. Ruckelshaus v. Monsanto*, 467 U.S. 986, 1003, 104 S.Ct. 2862, 2873, 81 L.Ed.2d 815 (1984)(discussing trade secrets in takings context and noting that "intangible property rights protected by state law are deserving of the protection of the Takings Clause").

**4.** The Eleventh Circuit has applied the same analysis to Florida's recognition of business goodwill as property. *See Economic Dev. Corp. v. Stierheim*, 782 F.2d 952, 954—55 (11th Cir.

a petroleum producer, had various state permits suspended by California officials. *Id.* at 1312. These officials also contacted Soranno's Gasco's customers and informed them that their state permits could be suspended if they did business with Soranno's Gasco in the future. *Id.* at 1312–13. We concluded that under California law:

> The goodwill of one's business is a property interest entitled to protection; the owner cannot be deprived of it without due process.

874 F.2d at 1316. We have subsequently cited *Soranno's Gasco* in support of the principle that if state law classifies business goodwill as property, a company cannot be deprived of goodwill without due process. *See Wedges/Ledges California, Inc. v. City of Phoenix,* 24 F.3d 56, 65 (9th Cir.1994); *see also Hall v. California Dept. of Corrections,* 835 F.Supp. 522, 525 n. 4 (N.D.Cal.1993).

#### 2. Application of the *Soranno's Gasco* Principle to WMX's Claim

Recognition of the principle announced in *Soranno's Gasco* leaves only one question for us to decide: Taking all the facts alleged in the Complaint as true, was WMX deprived of business goodwill by Miller's report? The majority concludes that because WMX alleged damage to reputation and nothing more, WMX has not been deprived of business goodwill. I believe California statutory and decisional law, supported by precedent from federal courts, compels the opposite conclusion.

#### a. Reputation as Business Goodwill

The proper focus for a discussion of the scope of "business goodwill" for purposes of this appeal is the law of California. *See Soranno's Gasco,* 874 F.2d at 1316 ("We look to independent sources such as state law to define the dimensions of protected property interests."); *Paul v. Davis,* 424 U.S. 693, 710–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976) (linking property that may not be deprived without due process to state law); *Board of Regents v. Roth,* 408 U.S. 564, 572,

92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972) (holding that "dimensions" of due process property interests are functions of state law).

Business goodwill is broadly defined in California as the "expectation of continued public patronage." **Cal. Bus. & Professions Code** § 14100. California courts at all levels have recognized for over sixty years that a key part of a business' expectation of continued patronage, and thus a vital component of business goodwill, is a company's reputation:

> [T]he 'standing and reputation' of a business is a vital part of the good-will of a business ... It follows that injury to the 'standing and reputation' of the business becomes an injury to the goodwill of the business.

*Hall v. Holstrom,* 106 Cal.App. 563, 289 P. 668, 672 (1930); *see also, e.g., Smith v. Bull,* 50 Cal.2d 294, 325 P.2d 463, 468 (1958) (in banc) ("[G]ood will of a business may be the result of personal skill, talent, experience, or reputation of an individual connected with the business."); *Webb v. Webb,* 94 Cal.App.3d 335, 156 Cal.Rptr. 334, 339 (1979) ("Goodwill in a business may exist in a professional practice or in a business which is founded upon personal skill or reputation."); *Karsh v. Haiden,* 120 Cal.App.2d 75, 260 P.2d 633, 637 (1953) (including among elements of business goodwill an individual's experience, skill, and reputation). The California legislature has also recognized that reputation is an important part of the mix of interests that comprise goodwill. *See, e.g.,* Cal.Code Civ. Pro. § 1263.510(b) (defining property for purposes of eminent domain compensation as "consist[ing] of the benefits that accrue to a business as a result of its location, reputation for dependability, skill, or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage.").

California's recognition of reputation as a vital component of business goodwill is consistent with other definitions of business goodwill we have reviewed. *See, e.g., North Clackamas Community Hosp. v. Harris,* 664

1986); *see also WAM Properties v. Desoto County,* 758 F.Supp. 1468, 1472 (M.D.Fla.1991)("Since [business goodwill] is a protected property inter-

est under Florida law, Florida may not deprive [plaintiffs] of that interest without due process of law.").

F.2d 701, 706 (9th Cir.1980) ("[G]oodwill, as determined by the Secretary [of Health & Human Services], represents the capacity to earn profits in excess of a normal rate of return due to establishment of favorable community reputation and consumer identification of business name."); *Stoumbos v. Kilimnik,* 988 F.2d 949, 963 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 190, 126 L.Ed.2d 148 (1993) (reviewing the Washington Supreme Court's definition of goodwill as including "continuity of name, location, reputation for honesty and fair dealing"). The approach of California courts to business goodwill is also consistent with other federal courts' recognition of the importance of reputation to the goodwill of a business. *See, e.g., Levitt Corp. v. Levitt,* 593 F.2d 463, 468 (2d Cir.1979) ("Goodwill is a valuable property right derived from a business's reputation for quality and service."); *Masquelette's Estate v. Commissioner,* 239 F.2d 322, 325–26 (5th Cir.1956) (" 'Good will ... [is] the advantage or benefit which is acquired by an establishment ... in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, or common celebrity, or reputation for skill, or influence, or punctuality, or from other accidental circumstances or even from ancient partialities or prejudices.' " (quoting Justice Story, *Partnerships* § 99)); *In re Corrugated Paper Corp.,* 185 B.R. 667, 670 (Bankr.D.Mass. 1995) ("Good will is the expectancy a business has of continued patronage from its customers. The source of that expectancy may be advantageous relationships the business has with parties such as employees, suppliers, or financiers. Or it may be the location of the business or its general reputation." (internal citations omitted)); *WAM Properties, Inc. v. Desoto County,* 758 F.Supp. 1468, 1471–72 (M.D.Fla.1991) (defining business goodwill as "the value inhering in the favorable consideration of customers arising from a business' reputation as being well-established and well-conducted."); *Marathon Petroleum Co. v. Chronister Oil Co.,* 687 F.Supp. 437, 440 (C.D.Ill.1988) ("[G]ood will in legal sense has come to mean the advantages a business has over competitors as a result of its name, location, and owner's

reputation."); *Glosband v. Watts Detective Agency,* 21 B.R. 963, 975 (D.Mass.1981) ("Beyond name and location, goodwill is now taken to mean 'all that goes with a business in excess of its mere capital and physical value, such as reputation for promptness, fidelity, integrity, politeness, business sagacity and commercial skill in conduct of its affairs, solicitude for the welfare of its customers and other intangible elements which contribute to successful commercial adventure.' " (quoting *Martin v. Jablonski,* 253 Mass. 451, 149 N.E. 156, 159 (1925)).

In short, the overwhelming weight of the precedent, most importantly the precedent of California courts, establishes that reputation is inseparable from business goodwill.

### b. Reputation, Business Goodwill, and WMX's Claim

Because the link between business goodwill and reputation is so clearly established in California statutory and case law, deciding whether WMX has successfully stated a § 1983 claim does not require much analysis. WMX alleged that Miller's report damaged the company's business goodwill by impugning its reputation. Because reputation is an important part of business goodwill and business goodwill is property, it follows that in alleging damage to reputation WMX has successfully stated a § 1983 claim for deprivation of property. *Cf. Hall,* 289 P. at 672 ("[T]he 'standing and reputation of a business is a vital part of the good-will of a business ...' It follows that injury to the 'standing and reputation' of the business becomes an injury to the goodwill of the business.").

The majority, however, reaches a different conclusion. The majority contends that damage to reputation alone is not a deprivation of business goodwill. With all due respect to my colleagues, the majority's position is indefensible.

The majority's reliance on *Paul v. Davis* and *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), in support of the proposition that "[d]amage to business reputation without more does not rise to the level of a constitutionally protected property

interest" is misplaced. *Ante* at 1319. In fact, we have already disposed of the majority's *Paul* based argument once. In *Soranno's Gasco*, we noted that:

> The district court held that the plaintiffs had no protected interest in uninterrupted permits, and that under *Paul v. Davis*, the alleged injury to business reputation alone was insufficient to establish a protected liberty interest. However, the district court did not directly address the plaintiffs' interest in the goodwill of their business. The goodwill of one's business is a property interest entitled to protection [under California law]; the owner cannot be deprived of it without due process.

*Soranno's Gasco*, 874 F.2d at 1316.

The analysis underlying our rejection of the majority's *Paul*-based argument in *Soranno's Gasco* applies with equal force to this appeal. First, like *Soranno's Gasco*, what is at issue here is the right of a business to its statutorily-protected property interest in goodwill, not the constitutional status of a business' reputation at stake in *Paul*. More generally, in neither *Paul* nor *Siegert*, unlike *Soranno's Gasco* and this appeal, was the Court faced with a state statute that created and defined the dimensions of the property right at stake. *Paul* implicitly acknowledged that if a state law classifying reputation as property had been in place, appellant's § 1983 claim may have survived. In distinguishing appellant's reputational interests in *Paul*, which were not based on state law, from protected liberty and property interests, the *Paul* Court emphasized that:

> It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either 'liberty' and 'property' as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status. *Paul*, 424 U.S. at 710–11, 96 S.Ct. at 1165.

After reviewing several examples of deprivations based on the alteration of rights guaranteed by state law, the Court continued:

> In each of these cases, as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished. It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the 'liberty' or 'property' recognized in those decisions. Kentucky law does not extend to respondent any legal guarantee of present enjoyment of reputation which has been altered as a result of petitioners' actions.... [A]ny harm or injury to [respondent's reputational] interest ... does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law, nor has it worked any change in respondent's status as theretofore recognized under the State's laws.

*Id.* at 711–12, 96 S.Ct. at 1165. The Court's emphasis on the importance of state law as a source of the dimensions of property interests is unmistakable. It is on the basis of that emphasis that WMX's claim is distinguishable from *Paul*.

After asserting that a focus on damage to reputation alone is unduly narrow, the majority goes on to limit its conception of business goodwill solely to the loss of customers that may result from direct interference by the government. *Ante* at 1320. Although government action that explicitly discourages customers from patronizing a business would certainly be one example of deprivation of business goodwill, neither the California legislature nor California courts measure the deprivation of business goodwill by the loss of customers.[5] Indeed, in construing the

---

5. Federal courts embrace a conception of goodwill that extends beyond customers to include employees, suppliers, and creditors. *See,*

*e.g., Bay Plastics, Inc. v. BT Commercial Corp.,* 187 B.R. 315, 330 n. 24 (Bankr.C.D.Cal.1995) ("Goodwill is generally understood to represent

state's eminent domain provisions, the Supreme Court of California has recognized that a business may suffer a deprivation of goodwill even when government action does not lead to the loss of a single customer. In *Department of Transp. v. Muller*, 36 Cal.3d 263, 203 Cal.Rptr. 772, 681 P.2d 1340 (1984) (in banc), the Court addressed whether deprivation of one element of goodwill—a business' location—was compensable even when the loss of goodwill attributable to the change in a business' location did not result in a loss of patronage. The Court held that since each element of goodwill has autonomous value independent of the element's effect on patronage, damage to any element is compensable under the eminent domain statute as a loss of goodwill.[6] The Court's analysis is instructive:

> The Department argues that section 1263.510 [of the eminent domain statute] authorizes compensation [for damage to business goodwill] only for losses attributable to a loss of patronage. It argues that the statute does not authorize compensation of any or all lost 'benefits' attributable to a change of location. Rather, the statute lists 'location' as one of the factors which may affect patronage. The Department argues that there is a compensable loss of goodwill only when there is a loss of patronage.
>
> [S]ection 1263.510 does not so limit 'goodwill.' The statute recognizes that 'location' is one of the 'circumstances' which results in 'retention of old or acquisition of new patronage.' The statute does not authorize compensation for a loss of patronage as such. It does authorize compensation for a loss of 'benefits' of 'location.' There are other benefits to a particular location besides patronage. While location unquestionably affects patronage-indeed,

Dr. Muller chose his new location precisely because it would allow him to retain his old patronage-a given location may well carry additional benefits. Here, the old location carried the manifest benefit of a cheap rent in an older building. The statute authorizes a court to award compensation for the loss of this benefit.

*Muller*, 203 Cal.Rptr. at 775–76, 681 P.2d at 1343–44; *see also Community Dev. Comm'n v. Asaro*, 212 Cal.App.3d 1297, 261 Cal.Rptr. 231, 234 n. 5 (1989) ("[T]he court in *Muller* held the value of goodwill is not limited to patronage."). Thus, even if no customer is lost as a result of the government's action, a business owner must still be compensated under *Muller* for the portion of goodwill attributable solely to the location of the business.

More generally, *Muller* brings us full circle to the same proposition recognized by *Hall* over sixty years ago: business goodwill is comprised of several elements, damage to any one of which may entitle a business owner to relief. While in *Muller* the element of goodwill at issue was a business' location, the *Hall* court's determination that "injury to the 'standing and reputation' of the business becomes an injury to the goodwill of the business" speaks directly to this appeal. It is unfortunate that the majority has chosen not to listen.

I believe consideration of this appeal should end with the proposition that damage to reputation constitutes a deprivation of business goodwill under California law. The majority rejects this proposition and substitutes a new "direct interference" test in its place. I now turn to an examination of the majority's new rule of law.

---

the value of intangible factors that are expected to translate into greater than normal earning power. In addition to the advantageous relationship that a business enjoys with its customers, goodwill also includes advantageous relationships with employees, suppliers, lenders, and others."); *Corrugated Paper Corp.*, 185 B.R. at 670 ("Good will is the expectancy a business has of continued patronage from its customers; source of that expectancy may be advantageous relationships the business has with parties such as employees, suppliers, or financiers, or it may

be the location of the business or its general reputation.").

6. As noted above, the California legislature has defined goodwill for eminent domain purposes as "consist[ing] of the benefits that accrue to a business as a result of its location, reputation for dependability, skill, or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage." *Cal.Code Civ. Pro.* § 1263.510(b).

### B. *The Majority's New Test*

After erroneously concluding that damage to reputation is not a deprivation of business goodwill, the majority contends that a business alleging a deprivation of goodwill must demonstrate that the government "directly interfered" with the business' customers. *Ante* at 1318. The majority relies on essentially two lines of argument in support of its new "direct interference" requirement. First, the majority asserts that *Soranno's Gasco* requires a business alleging a violation of § 1983 to show that the government directly contacted or otherwise interfered with the business' customers. Second, the majority voices concerns about the effects on federalism that allowing WMX's action to go forward will have. I do not believe either line of argument is persuasive.

#### 1. The Majority's Interpretation of *Soranno's Gasco*

Even if the majority's single-minded emphasis on the facts of *Soranno's Gasco* rather than on California law was appropriate, its analysis of *Soranno's Gasco* is not compelling. The majority's reading of *Soranno's Gasco* would require a plaintiff to establish not only that business goodwill was damaged by the government's disparagement of a business' reputation, but also that the government "directly interfer[ed] with [plaintiff's] 'expectation of continued patronage' by [its] customers." *Ante* at 1319. I cannot join the majority in grafting this new element of goodwill onto the existing body of California property law.

The majority's extraction of a "direct interference" requirement from the facts of *Soranno's Gasco* is curious. Our discussion of whether Soranno's Gasco had a protected interest in its business goodwill did not focus on the facts of the case at all; indeed, our discussion of goodwill as property did not include a single reference to what the majority characterizes as "direct interference" with Soranno's Gasco's customers. *See Soranno's Gasco*, 874 F.2d at 1316–17. Instead, we focused on the California legislature's decision to classify business goodwill as property. *See id.* at 1316. Without reference to the specific facts of the case, we concluded that

because Soranno's Gasco alleged a deprivation of goodwill, and goodwill is recognized as property in California, Soranno's Gasco had stated a valid § 1983 claim. The same analysis should control this case.

An examination of the possible consequences of the majority's new "direct interference" test exposes the weaknesses inherent in the majority's contortion of *Soranno's Gasco*. As long as the government does not contact a company's customers directly and disparage a business' reputation, an individual acting under color of California law could, under the rule announced by the majority today, destroy a company's reputation without providing a shred of due process. Besides being manifestly unjust, this approach ignores the important role reputation plays in a company's ability to build and maintain a reservoir of goodwill and violates the principle that a company need not be entirely deprived of a property interest before it is entitled to relief under § 1983. *See, e.g. Paul*, 424 U.S. at 711, 96 S.Ct. at 1165 (1976) (noting that Court has treated government action as a deprivation of property not only when a property interest created by state law is entirely extinguished, but also when the interest is "significantly alter[ed]"). California law, by protecting business goodwill and recognizing that reputation is a key variable in the goodwill equation, requires us to permit WMX to go forward *before* customers begin abandoning the company.

#### 2. Federalism

The second ground on which the majority seems to base its new rule is federalism. Rather than advancing federalism, however, the majority undermines it in at least two ways.

#### a. Respect for California's Interpretation of "Business Goodwill"

The majority's efforts to limit the interpretation of business goodwill run contrary to California's efforts to insure a liberal interpretation of that term. In addition to the California statutory and case law discussed above, the California legislature expanded the scope of protection for business goodwill in the eminent domain context through the

enactment of *Cal.Code Civ. Pro.* § 1263.510. As a California Court of Appeals explained:

> Historically, business goodwill was not an element of damages under eminent domain law. As recently as 1975, the California Supreme Court reaffirmed the principle that damage to a business conducted on property condemned for public use was not compensable as a property right under the just compensation clause of the California constitution. But in 1975, the Legislature enacted a comprehensive revision of California's eminent domain law, which, among other things, authorizes compensation for the loss of business goodwill.

*Asaro*, 261 Cal.Rptr. at 233 (internal citation omitted). The majority's failure to address the development of the law of business goodwill in California belies its implicit claim that the rule it announces today somehow advances federalist interests.

### b. § 1983 and State Tort Law

The majority asserts that allowing WMX's § 1983 action to go forward will encroach on California's tort system by "superimposing" a federal due process regime over the state law of defamation. The majority's concern is misguided. It is the majority, by basing its decision on a narrow reading of the facts of *Soranno's Gasco* rather than on an examination of state law, that does violence to federalist sensibilities. Our job is not to create federal common law by interpreting business goodwill solely in concert with our construction of the facts of *Soranno's Gasco*. The real lesson of *Soranno's Gasco* is that the people of California, acting through their elected representatives, have chosen to create a property interest in business goodwill. It is that choice we are bound to respect.

Moreover, we have recognized that whatever the wisdom of extending § 1983 to traditional state defamation actions may be, that extension may be inescapable if a state classifies reputational interests as property. In *Cooper v. Dupnik*, we quoted *Sullivan v. State of New Jersey*, 602 F.Supp. 1216

(D.N.J.1985), in support of the proposition that " '[i]f a state recognizes reputation as a liberty interest or property right, then the very act of defamation itself infringes on the right and is actionable under § 1983 if performed under color of state law.' " 924 F.2d 1520, 1533–34 (9th Cir.1991) (quoting *Sullivan*, 602 F.Supp. at 1222), *aff'd* 963 F.2d 1220 (9th Cir.) (en banc), *cert. denied*, 506 U.S. 953, 113 S.Ct. 407, 121 L.Ed.2d 332 (1992); *cf. Paul*, 424 U.S. at 710–12, 96 S.Ct. at 1165–66 (implying that § 1983 claim could have gone forward if state law had classified reputation as property). State law, not the facts of *Soranno's Gasco*, controls the scope of property interests protected by § 1983. By ignoring this principle, the majority today does nothing to serve the interests of federalism.

### 3. Application of the Majority's New Test to WMX's Claim

Although I am convinced that state law, *Soranno's Gasco*, and other relevant authorities all establish that damage to business reputation alone is enough to constitute a deprivation of goodwill, WMX should prevail even under the majority's new "direct interference" test. Miller concluded his report by instructing that WMX's "history requires extreme caution by the San Diego County Board of Supervisors *or any other governmental entity contemplating any contractual or business relationship with Waste Management.*" (emphasis added). Clearly, Miller's recommendation of using "extreme caution" in doing business with WMX was directed at two audiences: the San Diego Board of Supervisors and "any other governmental entity" that might contemplate doing business with WMX. Just as clearly, each of these audiences are customers or potential customers of WMX. The San Diego County Board of Supervisors, to which Miller's report was submitted, solicited the report precisely because it was contemplating entering into a contractual relationship with WMX.[7] When Miller submitted the report to the Board, he was in every sense directly

---

7. The fact that the Board's patronage of WMX was only prospective does not distinguish it from the facts of *Soranno's Gasco*. The government's interference with Soranno's Gasco's customers was also prospective, since the letters written to Soranno's Gasco's customers cautioned against any future dealings with the plaintiff's company.

interfering with WMX's expectation of patronage with its potential customer. Moreover, WMX has contracts with over 1500 governmental entities nationwide. Thus, Miller's warning to "any other governmental entities" to use extreme caution constituted direct interference with WMX's expectation of continued patronage in the government contracts sector.[8]

In sum, given the message (think twice before doing business with WMX), the messenger (the leading law enforcement official in San Diego County), and the actual and intended audiences (governmental entities in general and the Board of Supervisors in particular), I believe that WMX should survive a 12(b)(6) motion even under a "direct interference" reading of *Soranno's Gasco*. Miller did not make a general public statement or toss some vague, off-the-cuff assertions into the public domain. Rather, Miller, in response to a potential WMX customer's request in the midst of a well-publicized search for a waste management contractor, submitted a highly damaging report directly to that customer, and added a general warning to other similarly situated potential WMX customers for good measure.

### III. WMX'S § 1983 DEPRIVATION OF LIBERTY CLAIM

WMX is also entitled to go forward on its § 1983 deprivation of liberty claim. The analysis overlaps significantly with the foregoing examination of WMX's deprivation of property claim.

The majority correctly notes that under *Paul v. Davis*, a plaintiff alleging a deprivation of liberty under § 1983 must establish not only "stigma," e.g. damage to reputation, but also the "plus" factor of "a distinct alteration or extinction of a previously recognized right or status." *Ante* at 1319 (citing *Paul*, 424 U.S. at 711, 96 S.Ct. at 1165). Unfortunately, the majority's selective reading of

relevant precedent fatally undermines its application of the stigma-plus test to WMX's claim.

As a threshold matter, the majority recognizes that if it had determined as part of WMX's deprivation of property claim that damage to reputation is a deprivation of business goodwill, WMX would have "established both prongs of the 'stigma-plus' test." *Ante* at 1320. I agree with the majority's observation, and, because I believe damage to reputation *is* a deprivation of goodwill, I would hold that WMX has established both *Paul* prongs.

However, the majority goes on in dicta to argue that "even if [WMX] had established both prongs of the 'stigma-plus' test, there is no state action to support the latter prong of the test." *Ante* at 1320. I strongly disagree with this conclusion.

In support of its assertion, the majority purports to reject *Marrero v. City of Hialeah*, 625 F.2d 499 (5th Cir.1980), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981), and embrace *Sullivan v. New Jersey Div. of Gaming Enforcement*, 602 F.Supp. 1216 (D.N.J.1985), *aff'd*, 853 F.2d 921 (3d Cir.1988). Through its selective reading of *Sullivan*, however, the majority only succeeds in creating a doctrinal conflict that does not actually exist. The full text of the relevant *Sullivan* passage establishes that when, as in this case, a state law defines the liberty or property interest, the majority's "state action" requirement is satisfied:

> In short, a *sine qua non* of a "stigma-plus" suit is that the "plus" must be the result of state action directly affecting the plaintiff's rights or status under the law.
>
> . . .
>
> *If a state recognizes reputation as a liberty interest or property right, then the very act of defamation itself infringes on the right and is actionable under § 1983 if*

---

**8.** Contrary, then, to the majority's characterization that "this case only involves defamatory remarks made to the public generally which allegedly injured the plaintiffs' business reputation," *Ante* at 1319, Miller's report singled out as its intended audience not only the Board, but also a vital and highly sensitive sector of WMX's customer base—governmental entities. Of

course, I believe that even had Miller addressed his conclusions to the general public rather than to WMX's customers, WMX would still be entitled to survive summary judgment. There is precious difference between a disparagement announced to one's customers and one announced to the world. The purpose and the result are the same.

*performed under color of state law.* Put another way, the "stigma" itself supports the cause of action, so that there is no need to go into "stigma-plus" analysis or to determine whether state action was involved with the "plus."

In the present case, there has been no contention that reputation in itself has the status of a property right or liberty interest. Thus, there can be no argument that the alleged injury to reputation itself equals the extinguishment or alteration of a right or status as required under *Paul. Where state law does not accord property right/liberty interest status to reputation,* for a court to require a showing of state action only as to the "stigma" portion of the "stigma-plus" test would be to do away with the latter prong of the test. If plaintiff only has to show that the state defamed him—and not that the state did something else as well—in order to state a claim for deprivation of liberty under § 1983, the effect would be to transmute all defamation actions against state actors in which plaintiff can show some harm resulting from the defamation in § 1983 actions.

*Sullivan,* 602 F.Supp. at 1222–23 (emphasis added); *see also Cooper,* 924 F.2d at 1533–34 (quoting *Sullivan* ). Thus, *Marrero* and *Sullivan* are not in conflict: each recognizes that a plaintiff alleging a deprivation of liberty under the stigma-plus test satisfies the state action requirement *if state law recognizes the liberty interest or property right at issue.*[9] Although the majority quotes liberally from the parts of *Sullivan* that hold that in the *absence* of a state law establishing a property interest a § 1983 plaintiff must show that the state did something in addition to defaming plaintiff, that discussion is not relevant to WMX's claim, which alleged a loss of its legally protected property interest in business goodwill.

In sum, because I believe state law protects WMX's interest in its reputation as it bears on its business goodwill, I conclude that WMX satisfies the state action requirement and successfully states a claim for deprivation of liberty under § 1983.

## IV. CONCLUSION

It is difficult to imagine a disparagement more damaging than an allegation that a waste management business has organized crime ties. It suggests that the business is not legitimate at all, but a mere front for desperados in an industry often burdened with an image of organized crime infiltration. It is an allegation easily made and, once done, extraordinarily hard to undo. When announced by a prosecutor, in this case the County's chief law enforcement officer—whose very job it is to pursue crime—it has an especially damaging impact. It is compounded when, as in this case, the target of the allegation has no forum in which to challenge it or offer contrary proof.

I would remand this case to district court as having properly stated a claim under 42 U.S.C. § 1983 for deprivation of WMX's property rights and liberty interests.

---

**9.** Accordingly, the majority's reading of our dicta in *Cooper* is also too narrow. *Ante* at 1320. In *Cooper*, we quoted the passage from *Sullivan* that appears above and indicated that when no state or federal law protects the property rights or liberty interests at issue, a § 1983 plaintiff may be unable to satisfy the state action requirement of the stigma-plus test. *See Cooper*, 924 F.2d at 1533–34. Because state law does protect WMX's interests, I believe our dicta in *Cooper* supports rather than detracts from WMX's claim. In any event, to the extent our dicta in *Cooper* is inconsistent with the result I would reach today, I would decline to follow it.